Andrew McClain, J.,
delivered the opinion of the Court.
The defendant was indicted in the Criminal Court of Memphis, on a charge of perjury.
It is alleged that in a controversy between defendant and Eliza Stillman, who, it. is averred, was his wife, concerning alimony, the defendant made oath to the truth of an answer to the petition and amended petition of the. said Eliza, in which answer he' stated that he had never been married- to the said Eliza, and the perjury is assigned upon this oath.
It is averred that this controversy was pending before a certain Military Commission, on the 5th day of *343 August, 1864, in the City of Memphis, where this oath was taken, and where, in consequence of the then existing war, the courts of Tennessee were suspended.
A motion was made to quash the indictment, which was sustained, and the State has appealed to this Court.
It is insisted that the indictment is defective in its vague and indefinite description of the tribunal in which the cause was pending in which the oath was taken.
The following extract (from the indictment) will present the particular points in which it is insisted it is defective:
“ The Grand Jurors of the State of Tennessee, duly elected, impanelled, sworn and charged to inquire in and for the body of the fifth, thirteenth and fourteenth civil districts, in the county of Shelby, in the State aforesaid, upon their oaths present, that C. A. Stillman, laborer, late of the civil districts aforesaid, on the 5th day of August, A.D., 1864, in the civil districts aforesaid, did wilfully and corruptly, intending to prevent the due course of justice, in his own proper person, come before J. C. Grierson, then and there Recorder of a certain Military Commission, duly appointed for the administration of justice during the time of the great American Rebellion in the United States, when the ordinary courts of the State of Tennessee were suspended and closed to suitors, in the district of Memphis, and within the civil districts aforesaid; J. C. Grierson, being then and there duly elected, qualified and appointed, and acting as Recorder for said Military Commission; and the said J. C. Grierson, had then and there competent pow *344 er and authority to administer an oath; that then and there, there was a certain cause pending before the said Military Commission, wherein Eliza Stillman was the plaintiff or complainant, and the said C. A. Stillman was defendant, for alimony, Ac. Said cause was duly commenced by petition being filed with the said Recorder of said Military Commission, together with an amended petition, filed by due authority in the custody of said Recorder of said Military Commission. Said Military Commission then and there had competent power and authority to try and determine said cause.”
Section 5129 of the Code, is in these words:
“In an indictment for perjury, or subornation of perjury, it is not necessary to set forth the pleadings, records or proceedings with which the oath is connected, nor the commission or authority of the court or person before whom the perjury was committed.”
Section 5130:
“It is sufficient in such cases, to give the substance of the controversy or matter in respect to which the offense was committed, and in what court or before whom the oath alleged to be false, was taken; and that the court or person before whom it was taken, had authority to administer it, with proper allegations of the falsity of the matter on which the perjury is assigned.”
These two sections of the Code are taken substantially from 23 George II., ch. 11.
At common law, where the oath upon which the perjury was assigned, was committed in a Court, (for instance, in an action of ejectment,) it was necessary to *345 set forth the pleadings, the proceedings on the trial, the whole evidence, and the assignment of perjury upon it: 2 Chitty Crim. Law, 307.
It was provided by 23 George II., ch. 11, that, in every indictment and information for willfull and corrupt perjury, it shall be sufficient to set forth the substance of the offense charged upon the defendant, and by what court, or before whom the oath was taken, (averring such court or person or persons to have a competent authority to administer the same,) together with the proper averment or averments to falsify the matter or matters wherein the perjury or perjuries is or are assigned, without setting forth the bill, answer, information, indictment, declaration, or any part of any record or proceeding, either in law or equity, other than aforesaid, and without setting forth the commission or authority of the court or person or persons before whom the perjury was committed: 2 Chitty Crim. Law, 307.
The controlling reason for the great particularity required in an indictment for perjury at common law, was, that it might appear upon the face of the indictment that the tribunal before which the judicial proceeding was pending in which the oath was taken, had jurisdiction of the proceeding; for if it did not, then perjury could not be assigned upon an oath taken in such proceeding: Stinson vs. State, 6 Yerg., 531; Wharton Am. Cr. Law, 474.
For illustration, we will suppose an indictment for perjury assigned upon an oath taken in a Court of Chancery.
*346 The commission of the Chancellor being set forth in the indictment, his authority for exercising the functions of that office, will appear. The proceedings of the Court of Chancery in which the oath was taken, being also set forth, it will appear from these whether the Court of Chancery had jurisdiction of ’ such proceeding or not. Now, upon these proceedings being set out in the indictment, if it shall appear to be an indictment for felony in the Chancery Court instead of a bill, answers, etc., involving some matter of equitable cognizance, it would clearly appear that the Chancery Court had no jurisdiction of the matter or proceeding in which the oath was taken; and therefore perjury could not be assigned upon such oath.
But these sections of the Code, 5129 and 5130, provide that, instead of setting out the commission under which the Court or officer acts, and the records and proceedings, it shall be sufficient to give the substance of the controversy or matter in respect to which the offense was committed, and in what court or before whom the oath alleged to be false was taken, and that the Court or person before whom it was taken, had authority to administer it; and that it is not necessary to set forth the record and proceedings nor the commission or authority of the Court or person before whom the perjury was committed.
It is plain that the Legislative intent was, to attain the same objects sought by the common law indictment, but in an abbreviated form.
The averment that the Court or person before whom *347 the oath was taken had authority to administer it, comes in lieu of the commission or other evidence of authority mentioned in section 5129.
The object in setting out the commission in the common law indictment or in making this averment under the Code, is not to inform either the defendant or the Court of the extent and character of the jurisdiction of the court in which the proceeding was pending. This is a matter of law which both the defendant and the Court are presumed to know. This averment being in lieu of the commission, is simply an allegation that the person or persons assuming to exercise the functions of the court or officer, had rightful authority to do so.
This inquiry leads to the consideration of the character of the tribunal mentioned in the indictment, viz.: A Military Commission. We will premise that it is not directly averred in the indictment that this Military Commission was convened under the authority of the United States. The date and place when and where it sat is given, however. This Court will take judicial cognizance of the fact that at the date mentioned Memphis was in the permanent military occupation of the United States forces, and it is averred that the State courts were suspended. The Military Commission being a tribunal recognized in the laws of the United States, we think the averments are sufficient to show that it was convened under the authority of the United States.
Benet, in his treatise on Military Law, says:
“In carrying on war in a portion of country occupied or threatened to be attaked by an enemy, whether within or without the territory of the United States, *348 crimes and military offenses are frequently committed which are not triable or punishable by courts-martial, and which are not within the jurisdiction of any existing civil court. Such cases, however, must be investigated and the guilty parties punished. The good of society and the safety of the army imperiously demand this. They must, therefore, be taken cognizance of by the military power; but, except in cases of extreme urgency, a military commander should not himself attempt to decide upon the guilt or innocence of individuals.
“On the contrary, it is the usage and custom of war among all civilized nations, to refer such cases to a duly constituted military tribunal, composed of reliable officers, who, acting under the solemnity of an oath and the responsibility always attached to a court of record, will examine witnesses, determine the guilt or innocence of the parties accused, and fix the punishment.
“This is usually done by courts-martial; but in our country, these courts have a very limited jurisdiction, both in regard to persons and officers. Many classes of persons can not be arraigned before such courts for any offense whatsoever, and many crimes committed even by military officers, enlisted men or camp-retainers, can not be tried under the ‘ Hules and Articles of War/ Military COMMISSIONS must be resorted to for such cases. Long and uninterrupted usage has made these part and parcel of common military law. They have grown out of the necessities of the service, and by recent statute have been recognized and legalized as military tribunals.
“Their powers have not been defined, nor their mode of proceeding regulated by any statute law; but usage, and the course of decision, have enforced in re *349 gard to them the same principles which prevail in the organization of courts-martial. It is therefore held, that the rules which apply to the convening, the constitution and the proceedings of courts-martial should apply to them, and then they should be subjected to review and confirmation in the same manner and by the same authority.”
See General Order, Headquarters Department of Missouri, January 1, 1862; Opinions of Judge-Advocate-General, 1865.
“Military offenses, under the rules and articles of war, must be tried in the manner therein directed, by courts-martial; but military offenses which do not come within the statute, must be tried and punished under the laws of war, by Military CommissionBenet Mil. Law and Courts-Martial, 203.
The Military Commission has been recognized by the Supreme Court of the United States, and in numerous Acts of Congress. In the case, ex parte, of Vallandigham, 1 Wallace’s R., 248, Mr. Justice Wayne, delivering the opinion of the Court, referring to the instructions approved by the President for the government of the armies of the United States, and published by the Assistant Adjutant-General, by order of the Secretary of War, said:
“It is affirmed in these instructions that military jurisdiction is of two kinds:
“First — That which is conferred and defined by statute.
“Second — That which is derived from the common law of war.
*350 “Military offenses under the statute, must be tried in the manner therein directed; but military offenses which do not come within the statute, must be tried and punished under the common law of war. The character of the courts which exercise these jurisdictions depend upon the local law of each particular -country.
“In the armies of the United States, the first is exercised by courts-martial, while cases which do not come within the rules and regulations of war, or the jurisdiction conferred by statute on courts-martial, are tried by Military Commissions. These jurisdictions are applicable not only to war with foreign nations, but to a rebellion when a part of a country wages war against its legitimate government, seeking to throw off all allegiance to it, to set up a government of - its own.”
It is provided by Act of Congress, approved June 20, 1864, chap. 114, sec. 5, “that there shall be attached to and made a part of the War Department, during the continuance of the present rebellion, a bureau to be known as the Bureau of Military Justice, to which shall be returned for revision the records and proceedings of all the courts-martial, courts of inquiry and Military COMMISSIONS of the armies of the United States, and in which a record shall be kept of all proceedings had thereupon.”
By section 6 of this Act, it is made the duty of the Judge-Advocate-General and his assistant, to receive, revise and have recorded, the proceedings of the courts-martial, courts of inquiry and Military Commissions of the armies of the United States.
*351 It is provided by section 30 of An Act of Congress, approved March 3, 1862, chap. 75:
“ That, in time of war, insurrection or rebellion, murder, assault and battery with an intent to kill, manslaughter, wounding by shooting or stabbing with an intent to commit murder, robbery, arson, burglary, rape, assault and battery with an intent to commit rape, and larceny, shall be punishable by the sentence of a General Court Martial or Military Commission, when committed by persons who are in the military service of the United States, and subject to the articles of war; and the punishment of such offenses shall never be less than those inflicted by the State, territory or district in which they may have been committed.”
Section 38 of the same Act, provides:
“That all persons who, in time of war or of rebellion against the supreme authority of the United States, shall be found lurking or acting as spies in or about any of the fortifications, posts, quarters or encampments, of any of the armies of the United States, or elsewhere, shall be tried by a general court-martial, or Military Commission, and shall, upon conviction, suffer death.”
By Act of Congress, approved July 2nd, 1864, ch. 215, sec. 1, it is provided:
“That the provisions of the twenty-first section of An Act entitled ‘An Act for calling out the. National forces, and for other purposes, approved third March, 1863, shall apply as well to sentences of Military Commissions as to those of courts-martial; and, hereafter, the commanding General in the field, or the commander of *352 the department, as the case may be, shall have power to carry into execution all sentences against guerrillas, marauders, for robbery, arson, burglary, rape, assault with intent to commit rape, and for violation of the laws and customs of war, as well as sentences against spies, mutineers, deserters, and murderers/ ”
In the quotations and references we have made, we have seen that, what is termed a Military Commission, is recognized by the executive, legislative and judicial departments of the Government of the United States, as a tribunal for the trial of offenses; but we have no where seen in these quotations or references, any recognition of this commission as a tribunal for adjusting controversies between private individuals in regard to property, and we are not apprised of any such recognition by the President, or any of the heads of departments, at Washington, nor by the legislative or judicial departments of the Government of the United States.
Such a controversy, we think, does not fall within the jurisdiction of what is known in the laws of the United States as a Military Commission.
A Military Commission is a tribunal now' as well known and recognized in the laws of the United States, as a court-martial; and, although the precise boundaries of its jurisdiction may not be as well defined as those of a court-martial, yet they are unquestionably defined and ascertained sufficiently to determine that a controversy between husband and wife concerning alimony does not fall within those limits.
In what we have said, we do not wish to be understood as, intimating that the government of the Uni *353 ted States, during the late war, holding in military occupation a portion of the territory in rebellion, did not possess the rightful authority, under the laws of nations, to determine controversies between private' citizens residing within such section of country.
What we mean to say is, that what is known in the laws of the United States as a Military Commission, is not a tribunal recognized in those laws as having such jurisdiction.
This being so, does the indictment in the present case show, that the oath upon which perjury is assigned, was taken in a proceeding pending in a tribunal which had jurisdiction of it?
We think it does not. When the term “Military Commission” is used in the indictment, in legal contemplation a tribunal is meant which is clothed with the jurisdiction which by law is attached to a tribunal of that name.
An argument in opposition to the conclusion at which we have arrived, may be suggested to this effect:
That, inasmuch as a military commander, holding a city in military occupation, can dispense justice between the inhabitants of such city, it is not essential by what name the particular tribunal he may ordain and establish for that purpose, may be called; and if it appear from the face of the indictment that the tribunal mentioned was not in technical phrase a Military Commission, but in fact one appropriate to the proceeding before it, that the State ought not to be prejudiced by the use of a wrong name; that in the present case it is averred (in the indictment) that this Mili *354 tary Commission was duly appointed for the administration of justice, during the time of the great American Rebellion in the United States, where the ordinary courts of the State of Tennessee were suspended, and closed to suitors; and that it is to be inferred from this language, that it was a tribunal for all causes that might be brought before it; whereas, a regular Military Commission is limited to the cause or causes named in the order convening it; and that this tribunal is to be regarded as having been established by an authority which rightfully belongs (under the laws of nations) to all belligerents holding military occupation of a portion of the enemy’s territory.
This argument, (made upon an indictment,) properly framed upon the state of facts assumed, would involve the question whether perjury could be assigned upon a false oath taken before a tribunal established by such authority.
The Government of the United States, in regard to its authority to establish such tribunals, under the circumstances indicated, occupied a relation similar to that which would have attached to a foreign government, under like circumstances. Suppose the Government of Great Britain and the United States at war, and that Memphis should be held in military occupation by British forces, and the General in command should establish a tribunal to dispense justice and determine controversies between the inhabitants. After the war is ended, and the city restored to her former relations to the State and National Government, could per *355 jury be assigned, under tbe laws of Tennessee, upon a false oath, taken before such a tribunal?
The frame of the present indictment relieves us from the necessity of determinining this question, and we intimate no opinion in reference to it. Assuming, for the present, that perjury might be assigned upon a false oath taken before a tribunal so authorized, and placing the case in the most favorable aspect for the State, we will suppose the term, a “certain Military Tribunal” had been used instead of a certain “Military Commission.”
How, we have seen that sections of the Code, 5129 and 5130, dispensing with the production of the commission or authority of the court or person before whom the perjury was committed, provides that it shall be sufficient to state in what court or before whom the oath alleged to be false was taken, and that the court or person before whom it was taken had authority to administer it. How, if it were alleged that the proceeding in which the oath was taken was a “certain military tribunal,” no definite idea would be given as to what particular tribunal is meant, or the character or extent of its jurisdiction, or who composed it; and no information would be given from which to determine whether it was such tribunal as might lawfully administer an oath or not in this case; and the indictment would not, therefore, meet the requirements of the law, and would be bad. The difficulty is not removed in the present case by the averment that the oath was administered by J. C. Grierson, the Recorder.
If it were conceded that peijury might be assigned *356 upon an oath taken before a tribuual established as we have supposed, and also that the duties and functions of a Recorder of such a tribunal were such as to be judicially known, still the oath, in legal contemplation, would not be taken before the Recorder, but before the tribunal in which the cause was pending.
The Recorder, if he was what it is contended he was —a mere ministerial officer — any oath administered by him, would, in legal contemplation, be taken before the tribunal of which he was Recorder.
In Tennessee, before the Act of 1850, chap. 103, a Clerk of the Chancery Court or Circuit Court, could not lawfully administer an oath in vacation, in any proceeding pending in their courts, but only in term: State vs. Brady, 1 Swan, 36.
Let the judgment be affirmed, and the defendant discharged.